60 F.3d 824
NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Thomas Noah RUSSELL, Plaintiff-Appellant,
v.
Shirley S. CHATER, Commissioner of Social Security,
Defendant-Appellee.
 No. 94-2371.
 United States Court of Appeals, Fourth Circuit.
 Argued: June 8, 1995.
Decided: July 7, 1995.
 
 ARGUED: Donald Joseph Willey, Legal Services of the Blue Ridge, Boone, NC, for Appellant. Clifford Carson Marshall, Jr., Assistant United States Attorney, Asheville, NC, for Appellee. ON BRIEF: Mark T. Calloway, United States Attorney, Asheville, NC, for Appellee.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, WILKINS, Circuit Judge, and BUTZNER, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Appellant Thomas Russell appeals the denial of his claim for Social Security disability insurance benefits. We affirm.
 
 
 2
 * Russell is a 40-year old resident of North Wilkesboro, North Carolina. On August 10, 1988, while working at a hardware store, he slipped and fell, injuring his right shoulder and neck. On February 4, 1991, Russell applied for federal disability insurance benefits on the basis of pain in his head, neck, shoulder, arms, chest, back, and legs. Russell claimed that his disability arose before December 31, 1988--the date on which his eligibility for Title II disability insurance benefits expired. See 42 U.S.C. Secs. 423(a), 423(c)(1); Roberts v. Schweiker, 667 F.2d 1143, 1144 (4th Cir.1981) (per curiam). After Russell's claim was denied at the initial administrative level, a hearing was held before an Administrative Law Judge ("ALJ"). At the hearing, the ALJ received into evidence a file of medical records reflecting the following information.
 
 
 3
 After Russell's injury, he was initially treated by John L. Bond, Jr., M.D. Dr. Bond admitted Russell to the hospital and prescribed various non-surgical measures, including traction, a hard mattress, and physical therapy. Dr. Bond discharged Russell on September 14, 1988.
 
 
 4
 On November 28, 1988, Russell was re-admitted to the hospital, this time under the care of Ernesto de la Torre, M.D. Dr. de la Torre diagnosed a ruptured extruded disk and performed surgery to remove the disk. According to Dr. de la Torre's notes, Russell "did well" postoperatively. He was discharged on December 1, 1988, and was advised to lose weight. (He weighed about 290 pounds at the time of the discharge, up from a pre-accident weight of 227.) On December 21, 1988, Dr. de la Torre noted that Russell was "doing fine" and that there was no "contraindication for returning to work."
 
 
 5
 Dr. de la Torre saw Russell twice in early 1989. On February 8, the doctor noted that Russell was experiencing pain in his neck, was having trouble sleeping, was gaining weight, and might be suffering from depression. One month later, however, Dr. de la Torre noted that Russell was "improving." The doctor stated unequivocally that Russell "may return to work." In a later report, Dr. de la Torre stated that Russell would not have residual problems because of his neck condition and "will be normal in the future."
 
 
 6
 Beginning in April 1989, Russell was treated by Craig R. Bennett, M.D., an orthopedic surgeon. In his initial visit with Dr. Bennett, Russell complained of pain in his neck, arms, shoulders, back, groin, and legs. Dr. Bennett prescribed various treatments over the next few months, including physical therapy. In July 1989, Dr. Bennett rated Russell as having a 20% permanent impairment to the back. The doctor noted that Russell was able to return to work with the following limitations: no forward bending or overhead activity; no lifting greater than 25 pounds; and no prolonged sitting or standing in one position for more than two hours at a stretch.
 
 
 7
 In 1990, Russell was enrolled in physical therapy, but he missed a number of appointments and was ultimately dropped from the program.
 
 
 8
 On March 21, 1991, Russell was examined by Dr. Robert DeBare. Russell complained of pain all over his body. Dr. DeBare observed that Russell weighed 340 pounds and had "morbid obesity." Russell was able to move around Dr. DeBare's examining room, take his socks off, and fully extend his elbows, wrists, hands, knees, and ankles. Because of pain, however, Russell exhibited a "marked limitation of range of motion in his neck" and was unable to raise his arms above his shoulders. Dr. DeBare was "not ... optimistic in the longterm prognosis of Mr. Russell because of my experience with chronic pain patients."
 
 
 9
 At the time of the hearing, Russell's weight had increased to 345 pounds. In his testimony before the ALJ, Russell claimed to have problems sleeping and stated that he suffered from severe, chronic pain all over his body.
 
 
 10
 After Russell finished his testimony, the ALJ heard from a vocational expert, Gary Sigmon. According to Sigmon, a hypothetical 37-year old man with the physical limitations outlined by Dr. Bennett could hold a number of light jobs, including bagger in the textile industry, small parts assembler, and cashier. On cross-examination, the expert admitted that these jobs would be unavailable to a person who suffered from pain so severe that he was unable to get out of bed.
 
 
 11
 Several months after the hearing, the ALJ issued an opinion denying Russell's claim. The ALJ began by stating the applicable legal standard. Under 42 U.S.C. Sec. 423(d)(1)(A), a claimant may receive Social Security disability insurance benefits only if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." The ALJ then properly followed the five-step decision process mandated by 20 C.F.R. Sec. 404.1520. See also Hunter v. Sullivan, 993 F.2d 31, 34-35 (4th Cir.1992) (per curiam) (discussing the five-step process).[1] He concluded that although Russell's physical problems would prevent him from resuming his prior work, Russell was not disabled from performing a variety of light jobs.[2] The Appeals Council denied review, and Russell filed an unsuccessful action in the district court seeking review of the agency's decision. This appeal followed.
 
 II
 
 12
 Russell argues that the ALJ committed several legal errors. First, he complains that the ALJ's analysis was insufficiently specific at step three of the five-step process. The ALJ's step-three analysis consisted of the observation that Russell's musculoskeletal impairment of the cervical spine was not sufficiently severe to equal or meet the criteria of a listed impairment. In Russell's view, this was inadequate. He maintains that the ALJ should have undertaken a detailed comparison of Russell's symptoms with each of the listed impairments set forth in the applicable regulations. Absent such an examination, Russell contends, judicial review is impossible.
 
 
 13
 We disagree. In Cook v. Heckler, 783 F.2d 1168 (4th Cir.1986), we remanded for further explanation because the ALJ failed to explain his conclusion that the claimant's disabilities were not equivalent to any listed impairment. We explained:
 
 
 14
 The ALJ should have identified the relevant listed impairments. He should then have compared each of the listed criteria to the evidence of Cook's symptoms. Without such an explanation, it is simply impossible to tell whether there was substantial evidence to support the determination.
 
 
 15
 Id. at 1173. Cook, however, does not establish an inflexible rule requiring an exhaustive point-by-point discussion in all cases. Here, the need for a full explanation is questionable at best because Russell does not take issue with the substance of the ALJ's step-three analysis; notably absent from his briefs on appeal is any meaningful contention that the ALJ's step-three determination is unsupported by substantial evidence. Moreover, this case is factually distinguishable from Cook. There, a number of listed conditions were potentially applicable, but we could not sort through the possibilities because of the ALJ's cursory and internally inconsistent findings; here, the ALJ discussed the evidence in detail and amply explained the reasoning which supported his determination. There is thus no impediment to judicial review in the case before us.
 
 
 16
 Russell also argues that the ALJ made insufficient findings regarding his mental health condition. Under the regulations, however, detailed findings are not required in the absence of any medically determinable impairment. See 20 C.F.R. Sec. 404.1520a(b). Here, the ALJ found that no such impairment existed as of December 31, 1988, and Russell does not dispute the correctness of this finding.
 
 
 17
 Russell next argues that the ALJ gave short shrift to his obesity. Russell weighed about 290 pounds as of December 31, 1988. As noted by the ALJ, however, the evidence did "not indicate the presence of any limitations associated with obesity and this is a remediable condition." Russell speculates that his obesity may have somehow aggravated his neck condition in a manner not fully considered by the ALJ, cf. 20 C.F.R. Sec. 404.1523 (multiple impairments must be considered together), but he does not explain the basis of this theory.
 
 
 18
 Next, Russell contends that the ALJ's decision is not supported by substantial evidence. See 42 U.S.C. Sec. 405(g); see also Hunter, 993 F.2d at 34 (discussing substantial evidence standard). The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). We reject Russell's challenge. The record contains persuasive evidence--including the contemporaneous opinions of two treating physicians--to support the ALJ's determination that Russell was not disabled as of the critical date of December 31, 1988. See Smith v. Schweiker, 795 F.2d 343, 345-46 (4th Cir.1986) (emphasizing "the importance of the opinions of treating physicians").
 
 
 19
 Russell's primary argument to the contrary is that the ALJ impermissibly discounted his subjective complaints of pain. The ALJ noted that Russell's physical condition could give rise to pain, but refused to credit Russell's claims as to the severity of the pain. The judge's credibility findings were based on inconsistencies in Russell's testimony, Russell's demeanor on the witness stand, Russell's admissions that he was able to undertake some daily activities and that he took only mild painkillers, and the absence of medical documentation. This type of credibility analysis is entirely proper. See Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir.1990); 20 C.F.R. Sec. 1529.
 
 
 20
 Russell also relies on the fact that he was found to be disabled in mid-1992, suggesting that it necessarily follows that his disability arose before December 31, 1988. The record, however, contains no evidence regarding the 1992 finding, so it is impossible to assess Russell's contention. Arguments regarding the onset of the 1992 disability should have been raised in the proceeding giving rise to that finding, not here.
 
 III
 
 21
 For the reasons stated, the judgment of the district court is
 
 
 22
 AFFIRMED.
 
 
 
 [1]
 In working through the five steps, the ALJ found that (1) Russell was not working, (2) Russell had a "severe" impairment, (3) Russell's impairment did not meet or equal the requirements of a "listed impairment," (4) Russell could not return to his prior job at the hardware store, and (5) Russell could perform other work
 
 
 [2]
 Light jobs involve a good deal of standing or walking (or sitting accompanied by pushing or pulling of arm or leg controls), frequent lifting of objects weighing less than ten pounds, and occasional lifting of objects weighing up to 20 pounds. 20 C.F.R. Sec. 404.1567(b) (1994)