**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-1480**

BRIAN EDWARD REID,

        Plaintiff - Appellant,

    v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant - Appellee.

Appeal from the United States District Court for the District of South Carolina, at Greenville. Timothy M. Cain, District Judge. (6:11-cv-02408-TMC)

Argued: May 15, 2014            Decided: July 2, 2014

Before TRAXLER, Chief Judge, and NIEMEYER and DUNCAN, Circuit Judges.

Affirmed by unpublished opinion. Judge Niemeyer wrote the opinion, in which Chief Judge Traxler and Judge Duncan joined.

**ARGUED:** Beatrice E. Whitten, Mt. Pleasant, South Carolina, for Appellant. Sarah Van Arsdale Berry, SOCIAL SECURITY ADMINISTRATION, Denver, Colorado, for Appellee. **ON BRIEF:** William N. Nettles, United States Attorney, Barbara M. Bowens, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina; John Jay Lee, Regional Chief Counsel, Kirsten A. Westerland, Assistant Regional Counsel, Dorrelyn K. Dietrich, Special Assistant United States Attorney, SOCIAL SECURITY ADMINISTRATION, Denver, Colorado, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

NIEMEYER, Circuit Judge:

Brian Edward Reid, who suffers from degenerative disc disease, applied for Social Security disability benefits. The Commissioner of Social Security denied Reid's claim, and the district court affirmed the Commissioner's decision.

On appeal, Reid contends (1) that the Commissioner ignored several years of his medical history and (2) that the Commissioner failed to consider the combined effects of his multiple impairments. Because we find that the Commissioner's decision was based on all the medical evidence and that the Commissioner did indeed consider Reid's impairments in combination, we affirm.

I

Reid filed for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, on December 7, 2006, alleging that he became unable to work on June 4, 2004, when, during work, he fell off of a roof.

Reid's medical history, as documented by the record, shows that, prior to his fall, on November 18, 2003, Reid visited Dr. George Khoury for his chronic neck pain. Dr. Khoury diagnosed Reid with cervical disc disease and, in December 2003, performed a two-level anterior cervical discectomy and fusion.

When Reid fell off the roof on June 4, 2004, he suffered two spinal fractures. After he was discharged from the hospital four days later, he still complained of pain and returned to the doctor on multiple occasions in the subsequent months. Although Dr. Khoury noted on September 9, 2004, that Reid was "feeling better" and that he had "minimal complaints," on January 13, 2005, he nonetheless reported that Reid had "not seen any improvement" and decided that a posterior fusion was appropriate. Dr. Khoury performed the procedure on February 11, 2005, and, by March 29, 2005, noted that Reid was "really progressing well" and was cutting back on his use of pain medication. On May 5, 2005, Dr. Todd Joye -- another doctor Reid was seeing for pain -- found that the fusion surgery "was very successful and ha[d] nearly resolved [Reid's] thoracic pain" and that steroid injections "help[ed] him tremendously in regards to his back pain." And on November 23, 2005, Dr. Khoury reported that Reid's "original thoracic pain ha[d] totally resolved."

Several months later, on March 24, 2006, Reid began seeing another doctor, Dr. Kerri Kolehma, complaining of "severe bilateral leg pain" that was aggravated by walking, difficulty using his left ankle, and numbness in several of his toes. Dr. Kolehma's physical exam revealed that Reid had "[n]ormal muscle bulk and tone," and Reid's tests yielded normal results, except

4

for some loss of reflexes. Subsequent testing revealed that Reid's leg pain was related to vascular problems. Reid underwent an iliac artery angioplasty on May 30, 2006, performed by Dr. Kevin Beach. By July 10, 2006, Dr. Beach found that Reid was "doing amazingly well" and "appear[ed] to be a changed man," noting that he had lost weight and was exercising.

On October 25, 2006, Reid again visited Dr. Khoury, whom he had not seen since February. Dr. Khoury concluded that Reid was "at maximum medical improvement and ha[d] essentially total disability to the lumbar spine because of his fracture." He also concluded that Reid was "not able to return to any kind of work activity at this point." A few months later, however, on January 17, 2007, when Reid visited Dr. Kolehma, he said that he felt "like a million bucks" after changing drugs. He reported that he had been cleaning his home and working out.

On April 11, 2007, Reid visited Dr. William Kee, a clinical psychologist, for help with his anxiety and pain management. Reid told Dr. Kee that he cooked on a daily basis and cared for his 12-year-old daughter.

In September 2007, Reid began seeing Drs. Marc Dubick and Tony Azzolino, who noted that Reid had severe pain below the fusion site and weakness in the lower lumbar area. Dr. Dubick administered an epidural injection and Reid experienced "total

pain relief." Dr. Dubick reported on December 17, 2007, that Reid's "functional level ha[d] increased dramatically."

Reid continued to go to Dr. Dubick from January 2008 to July 2009 for injection therapy and pain medication, and during this period, Dr. Dubick reported that Reid was "doing very well," "gardening and doing his normal activities," "leading a normal lifestyle," and "showing some improvement," although Reid sometimes complained of "significant pain" and experienced "quite a bit of discomfort." In July 2009, Reid suffered a fall that exacerbated his back pain, but the next month, on August 19, 2009, Dr. Dubick noted that Reid's "injuries [were] markedly improved from his fall" and that his back discomfort was "minor."

Finally, several times in 2008, Reid visited Summerville Behavioral Health, complaining of obsessive-compulsive disorder symptoms and panic attacks.

Reid filed his claim for disability benefits on December 7, 2006, which was denied. Following his request, a hearing was conducted before an administrative law judge ("ALJ") on September 11, 2009. While the ALJ did find that Reid suffered from several medical impairments, he did not find credible Reid's statements about the intensity, persistence, and effects of his pain and other symptoms in light of the objective evidence of his residual functionality and positive response to

6

treatment. Accordingly, the ALJ found that because Reid could engage in sedentary work, he "ha[d] not been under a disability . . . from June 4, 2004 through the date of this decision."

On review of the ALJ's decision, the Appeals Council remanded the case, ordering the ALJ to consider the evidence from June 4, 2004, forward, which the ALJ had not done because he thought that res judicata applied to the 2004-2006 period. The Appeals Council also instructed the ALJ to consider the effect of Reid's mental impairments and obesity on his disability claim.

The ALJ conducted a second hearing on January 18, 2011, after which he again denied Reid benefits. The ALJ found that Reid's severe impairments included adjustment disorder and a history of obesity, in addition to degenerative disc disease. Nonetheless, the ALJ found that Reid "did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." In making that finding, the ALJ explained that he "ha[d] considered the combined effects of the claimant's impairments, both severe and non-severe, and ha[d] determined that the findings related to them [were] not at least equal in severity to" a listed impairment. After recounting Reid's medical history in substantial detail, the ALJ found that Reid

7

had the residual functional capacity to perform unskilled sedentary work and thus was not disabled.

Reid again appealed to the Appeals Council, which largely adopted the ALJ's findings and conclusions, including the findings that Reid's impairments did not meet or medically equal in severity a listed impairment and that Reid's subjective complaints were not credible in light of his residual functional capacity. Differing from the ALJ, however, the Appeals Council found that Reid's adjustment disorder was not severe, and, therefore, that Reid retained the ability to perform "the full range of sedentary work." The Appeals Council's decision was the final decision of the Commissioner.

Reid commenced this action, seeking review of the Commissioner's decision. He argued, among other things, that (1) the decision was not based on substantial evidence because the ALJ failed to consider the evidence between 2004 and 2006 and (2) the ALJ had not evaluated the combined effects of Reid's multiple impairments. With respect to the substantial evidence argument, a magistrate judge found that Reid had failed to show how he was harmed by any failure on the part of the ALJ to specifically cite evidence from the 2004-2006 period and that, in any event, the record indicated that the ALJ and Appeals Council had indeed considered all the evidence before them. The magistrate judge also found that the ALJ had explicitly

8

considered and discussed Reid's combination of impairments. Thus, the magistrate judge recommended affirming the Commissioner.

The district court followed the magistrate judge's recommendation and affirmed, adopting the magistrate judge's report and providing additional explanation for its decision. Reid v. Astrue, No. 6:11-2408-TMC, 2013 U.S. Dist. LEXIS 17815 (D.S.C. Feb. 11, 2013).

This appeal followed.

## II

Reid raises two issues on appeal. First, he argues that "[t]he Commissioner's decision to deny [his] benefits was not based on the entire record." Specifically, he criticizes the ALJ's discussion of his medical history in the period from 2004 to 2006, noting that "[t]he ALJ referenced evidence from the period 2004 to 2006 just a few times; and he never mentioned objective findings which supported Mr. Reid's claims." He contends that this "[f]ailure to consider all relevant evidence precludes a proper substantial evidence test analysis." Second, Reid argues that "the Commissioner failed to provide any meaningful analysis of the combined effect of his multiple impairments."

We review the district court's judgment de novo, applying the same standard of review applied by the district court, and thus we review the Commissioner's decision for substantial evidence. See Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). While the Commissioner's decision must "contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based," 42 U.S.C. § 405(b)(1), "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision," Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam); accord Russell v. Chater, No. 94-2371, 1995 U.S. App. LEXIS 17254, at *8 (4th Cir. July 7, 1995) (per curiam) (explaining that this Court has not "establish[ed] an inflexible rule requiring an exhaustive point-by-point discussion in all cases").

After carefully reviewing the record in the present case, we conclude that the Commissioner's decision satisfied the statutory requirements. The Commissioner, through the ALJ and Appeals Council, stated that the whole record was considered, and, absent evidence to the contrary, we take her at her word. See Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005) ("[O]ur general practice, which we see no reason to depart from here, is to take a lower tribunal at its word when it declares

10

that it has considered a matter"). Moreover, the record shows that the ALJ's decision, on which the Commissioner's decision was based, specifically referenced Reid's "history of thoracic and lumbar fusion," noting that "treatment notes from the relevant period document that the claimant was responding well to treatment with minimal complaints." This finding -- which relates to the time period that Reid claims the Commissioner ignored -- is amply supported by the record. Indeed, Reid has failed to point to <u>any</u> specific piece of evidence not considered by the Commissioner that might have changed the outcome of his disability claim. As such, we conclude that the Commissioner's decision was based on the entire record and supported by substantial evidence.

Reid's other argument -- that the Commissioner failed to consider his impairments <u>in combination</u> -- is similarly without merit. To be sure, an ALJ must "adequately explain his or her evaluation of the combined effects of [a claimant's] impairments." <u>Walker v. Bowen</u>, 889 F.2d 47, 50 (4th Cir. 1989). But in the present case, the ALJ did consider Reid's impairments in combination. After meticulously describing why Reid's three severe impairments -- his degenerative disc disease, adjustment disorder, and obesity -- did not, individually, qualify as disabling, the ALJ then considered whether these three

11

impairments, cumulatively, would "equal in severity" a listed impairment:

> [T]he undersigned has considered the combined effects of the claimant's impairments, both severe and non-severe, and has determined that the findings related to them are not at least equal in severity to those described in Listings 1.00, 4.00, 11.00, and 12.00. In this consideration, the undersigned has specifically considered the cumulative effects of the impairments on the claimant's ability to work. See also Walker v. Bowen, 889 F.2d 47 (4th Cir. 1989). The undersigned notes that the claimant's heart condition was asymptomatic despite his history of obesity. Even with consideration of the combined effects of the claimant's obesity, treatment records fail to indicate that the claimant's degenerative disc disease status post fusion resulted in an inability to ambulate or perform fine or gross motor movements effectively. The claimant's physical impairments obviously affected his mental health condition. Nevertheless, when considered in conjunction, no further limitation in the claimant's mental health condition, other than those discussed above, are warranted.

(Emphasis added). Relying on this analysis, the ALJ concluded that Reid "did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments." (Emphasis added). It is thus readily apparent that the Commissioner specifically contemplated the combinatorial effects of Reid's various impairments and, in doing so, more than satisfied the statutory requirements and our guidance set forth in Walker.

AFFIRMED

12