**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 20-1060**

───────────────

VANCE CAULKINS,

                    Plaintiff – Appellant,

           v.

KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration,

                    Defendant – Appellee.

───────────────

Appeal from the United States District Court for the Western District of North Carolina, at Asheville.  Kenneth D. Bell, District Judge.  (1:18-cv-00192-KDB)

───────────────

Argued:  December 7, 2021                              Decided:  June 1, 2022

───────────────

Before GREGORY, Chief Judge, RICHARDSON, Circuit Judge, and Rossie D. ALSTON, Jr., United States District Judge for the Eastern District of Virginia, sitting by designation.

───────────────

Affirmed by unpublished per curiam opinion.

───────────────

**ARGUED:**  Dana Wayne Duncan, DUNCAN DISABILITY LAW, S.C., Nekoosa, Wisconsin, for Appellant. LaNita Lee McWilliams, SOCIAL SECURITY ADMINISTRATION, Baltimore, Maryland, for Appellee. **ON BRIEF:**  R. Andrew Murray, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina; Peter A. Heinlein, Special Assistant United States Attorney, Office of the General Counsel, SOCIAL SECURITY ADMINISTRATION, Baltimore, Maryland, for Appellee.

───────────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Vance Caulkins ("Caulkins") appeals the district court's order upholding the Social Security Administration's denial of his application for disability insurance benefits. Because we conclude the administrative law judge ("ALJ") appropriately evaluated the disability determination reached by the Department of Veterans Affairs, reasonably conducted a function-by-function analysis of Caulkins's ability to perform unskilled work activities, and reasonably weighed the medical evidence, we affirm.

I.

A.

In 2010, Caulkins applied for social security disability benefits. He contends that he has been unable to engage in any substantial gainful activity since December 1, 2010, due to a mental health impairment that began after he developed an inguinal hernia during his Coast Guard service. The Social Security Administration ("SSA") initially denied his claim, but the district court remanded his case to SSA for additional findings. On remand, the ALJ concluded that Caulkins's mental impairment was not "severe" under the agency's regulations, meaning he was not considered disabled under the Social Security Act. 42 U.S.C. § 423(d)(1)(A). The district court affirmed the ALJ's decision, and this appeal followed.

Before determining that Caulkins could perform at least sedentary work, the ALJ looked to a number of sources in the record. In 2010, a Department of Veterans Affairs ("VA") examiner evaluated Caulkins and assigned him a 50 percent disability rating based on his depressive disorder. And in 2013, a VA examiner added a diagnosis of anxiety

3

disorder, noting that Caulkins had reported a number of severe symptoms. A few months later, the VA increased Caulkins's disability rating to 70 percent based on his mental impairment, identifying both depressive disorder and anxiety disorder. Ultimately, the VA assigned Caulkins a 100 percent disability rating. The ALJ considered the VA's decision that Caulkins was disabled under its rules but noted that in the SSA's proceeding, "the finding of disability is reserved for the Commissioner." J.A. 19.

Applying SSA standards, the ALJ found that Caulkins's impairments, "although limiting, . . . do not preclude all work." *Id.* In reaching this conclusion, the ALJ relied on the clinical evidence in the record and the extent of Caulkins's daily activities. Clinical evidence showed that medical providers had noted Caulkins's "very fit physical appearance" and observed his calloused hands, which in the view of the ALJ suggested Caulkins was engaging in more physical activity than he reported. In addition, Caulkins's daily activities included using a computer, conducting online research, performing light household chores, caring for his small children, studying Spanish, planning vacations to Spain and Mexico, designing websites, and shopping outside the home multiple times a week.

Caulkins performed these activities even without following doctor-recommended treatment regimens. He elected to forego further surgery on his hernia, instead opting for less invasive treatment through a pain-management clinic. Although a pain-management physician recommended that Caulkins undergo ten to twelve nerve block procedures, the record suggests that Caulkins received only one such treatment. When Caulkins took his pain medication, he reported fewer symptoms. In addition, Caulkins was prescribed an

anti-depressant medication to treat his mental health condition. But the record shows that his adherence to his prescribed medication during the relevant time period was sporadic. When Caulkins took his anti-depressant medication as prescribed, he reported still experiencing some difficult days but saw an overall improvement in his condition.

The ALJ also assessed the medical opinion evidence in the record, including the opinions of Dr. Connelly, a mental health provider; Dr. Kelly, a VA primary care doctor; and Dr. Morton, a consulting psychologist. The ALJ afforded certain findings in these opinions great weight but discounted portions he found to be unexplained, unsupported, or inconsistent with the record. Recognizing that these opinions and the record as a whole showed that Caulkins—who was 34 years old at the time of the hearing—had a mental impairment, the ALJ assessed whether Caulkins's impairment significantly limited his ability to perform basic work activities. In the end, the ALJ found that while Caulkins's limitations precluded any strenuous work activity, his mental impairment did not foreclose his ability to perform at least some unskilled, sedentary work. Based on this finding, the ALJ concluded that Caulkins was not disabled.

## B.

We review the district court's judgment *de novo*, applying the same standard of review applied by the district court. *See Monroe v. Colvin*, 826 F.3d 176, 186 (4th Cir. 2016). This Court must affirm a Social Security disability determination if the "ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." *Woods v. Berryhill*, 888 F.3d 686, 691 (4th Cir. 2018). Substantial evidence is no more than what a reasonable person might accept as adequate to support the ALJ's

conclusion; it must be more than a scintilla of evidence, but it need not be a preponderance of the evidence. *See Biestek v. Berryhill*, —— U.S. ——, 139 S. Ct. 1148, 1154 (2019); *Pearson v. Colvin*, 810 F.3d. 204, 207 (4th Cir. 2015). We may not reweigh conflicting evidence, make credibility determinations, or substitute our own judgment for that of the agency. *See Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012).

To determine whether a Social Security disability claimant is eligible for disability benefits, an ALJ applies a five-step sequential evaluation process to determine whether the claimant can engage in substantial gainful activity. 20 C.F.R. § 416.920(a)(4). The ALJ considers:

> [A]t step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work.

*Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015). The claimant bears the burden of proof at each step except step five, when the burden shifts to the Commissioner.

The ALJ's January 31, 2017 decision found, at step one, that Caulkins had not been working. At step two, he found that Caulkins presented several severe medical impairments that met the regulations' duration requirement: status-post left inguinal hernia repair, recurrent left inguinal hernia, and neuritis of the ilioinguinal nerve. The ALJ also found that Caulkins's mental impairment was non-severe. At step three, he decided that Caulkins's impairments did not meet or equal any of the impairments listed in the regulation. The ALJ's analysis was guided by SSA disability regulations that set out four

6

functional areas the agency must consider in evaluating mental disorders.  The ALJ then found that Caulkins had the residual function capacity to perform the full range of unskilled sedentary work.  At step four, the ALJ concluded that Caulkins was unable to perform any work he had done in the past, which required both skill and physical exertion.  And at step five, the ALJ found that Caulkins could perform other common, less physically demanding forms of work that existed in significant numbers in the national economy.  The ALJ therefore concluded that Caulkins was not disabled under the Social Security Act.

## II.

Against this backdrop, we turn to Caulkins's arguments for remand.  He contends that the district court should not have affirmed the ALJ's disability determination because the ALJ impermissibly discounted the VA disability rating, conducted a flawed function-by-function analysis of his ability to perform sedentary work, and inappropriately weighed medical opinion evidence in the record.

## A.

Caulkins first argues that the ALJ erred in not considering the findings that supported the VA's disability decision.  We first note that it is the VA's ultimate conclusion—not specific parts of the record before the VA, as Caulkins suggests—that requires deference.  In reviewing the ALJ's decision not to adopt the VA's disability rating, we start with the background rule that "in making a disability determination, the SSA must give substantial weight to a VA disability rating."  *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 343 (4th Cir. 2012) ("Because the purpose and evaluation methodology of both programs are closely related, a disability rating by one of the two agencies is highly

7

relevant to the disability determination of the other agency."). The VA is not due reflexive deference, however, as "an ALJ may give less weight to a VA disability rating when the record before the ALJ clearly demonstrates that such a deviation is appropriate." *Id.* at 343. And "because the SSA employs its own standards for evaluating a claimant's alleged disability, and because the effective date of coverage for a claimant's disability under the two programs likely will vary," *id.*, an ALJ may, in certain circumstances, appropriately afford a VA decision less than substantial weight. In those cases, the ALJ must give "persuasive, specific, valid reasons for doing so that are supported by the record." *Woods*, 888 F.3d at 692.

*Woods* outlines a few of these permissible reasons. "For example, an ALJ could explain which aspects of the prior agency decision he finds not credible and why, describe why he finds other evidence more credible, and discuss the effect of any new evidence made available after [the VA] issued its decision." *Id.* Although "[t]his list is not exclusive," the bottom line "is that the ALJ must adequately explain his reasoning." *Id.* at 692-93.

The ALJ met that standard in the instant case. His review of the clinical evidence in the record, and significantly, of the type and extent of Caulkins's daily activities, led him to depart from the VA's conclusion that Caulkins was 100 percent disabled. The ALJ found that the type and extent of Caulkins's daily activities were atypical for a fully disabled individual. Specifically, the ALJ pointed to activities like performing light household chores, conducting extensive online research, and independently caring for and supervising his small children, as reason to doubt whether the agency should accept VA's

8

100 percent disability rating. The ALJ also observed that subsequent documentation of his capabilities, such as planning to travel abroad, learning a new language, and designing websites, further indicated that Caulkins's limitations were not as significant and pervasive as he suggested.

It does not appear that the VA considered any of this evidence in reaching its disability determination. This flaw was a persuasive and legitimate reason to discount the VA's disability rating. *See id.* at 692. And it appears that Caulkins performed at least some of these more extensive daily activities *after* the VA reached its disability determination. As the district court noted, the relevant period extends about three years beyond the VA's decision. The ALJ, acting with the benefit of current information, assessed "the effect of [this] new evidence made available after [VA] issued its decision"— one of the precise reasons for discounting a VA disability decision we recognized in *Woods*. *Id.* He then reasonably concluded that Caulkins's daily activities were inconsistent with a finding that his impairments were so limiting that they precluded even sedentary work. That finding is "supported by the record"—indeed, a more up-to-date record than the one that was before the VA—and is a "persuasive, specific, valid reason" for giving the VA's disability rating less than substantial weight. *Id.*

The ALJ had other persuasive reasons for discounting the VA's decision. As the district court observed, the VA's rating decision with respect to Caulkins's mental impairment was far less extensive and detailed than the ALJ's analysis. Moreover, in deviating from the VA's opinion, the ALJ cited not only Caulkins's daily activities, but also the clinical evidence of record—including hand calluses indicative of physical activity

9

that were revealed during an examination performed by Dr. Barbara Dubiel. Additionally, as Caulkins acknowledged at oral argument, the VA and SSA employ different standards for determining unemployability. This incongruence is a reason to acknowledge that an ALJ is not required to mechanically adopt the VA's findings where, as here, the ALJ adequately explains that aspects of the VA's decision deserve less weight in light of other, more credible evidence. *Id.*

## B.

Caulkins also argues that, contrary to agency regulation, the ALJ improperly assessed Caulkins's mental impairments as non-severe. Caulkins maintains that the ALJ did not consider the combined effect of all his medically determinable impairments, severe or non-severe, including corresponding limitations. In addition, Caulkins asserts for the first time on appeal that the ALJ was required to ask him about a possible reason for his failure to comply with and pursue treatment. Because Caulkins did not raise this argument before the ALJ or in the district court, however, we do not consider it here. *See, e.g.*, *United States v. Turner Constr. Co.*, 946 F.3d 201, 208 (4th Cir. 2019).

Under the Social Security Act, a claimant must "furnish[] such medical and other evidence" of a disability to qualify for benefits. 42 U.S.C. § 423(d)(5)(A). Mental impairments are considered "severe" under the agency's regulations only if they significantly limit a person's ability to perform basic work activities. 20 C.F.R § 404.1520(a)(4). To evaluate whether a mental impairment meets this condition, the ALJ looks to four functional areas. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.05(B). Known as the paragraph B criteria, these standards ask whether a claimant can "understand,

10

remember, or apply information"; "interact with others"; "concentrate, persist or maintain pace"; and "adapt or manage oneself." *Id.* To be sure, Caulkins bears the burden of proving that his impairments are so severe that they prevent him from performing any substantial gainful activity. *See Bowen v. Yuckert*, 482 U.S. 137, 147-48 (1987) (citing 42 U.S.C. § 423(d)(1)(A)).

The ALJ found that Caulkins had only mild limitations in three of the four functional areas and no limitation in the fourth functional area, adapting or managing himself. The ALJ described the treatment Caulkins received for his limitations, which the ALJ observed was not the sort of treatment one would expect a completely disabled man to receive. And he pointed out that treatment, including but not limited to medication, generally improved Caulkins's symptoms, even though Caulkins often opted not to follow prescribed treatment plans. Furthermore, the ALJ looked to the variety and extent of Caulkins's daily activities and inferred that Caulkins's depression did not significantly limit his functioning during the relevant time period.

The ALJ's opinion confirms that he reached this disability determination after considering all of the evidence, including the limitations and restrictions imposed by the combined effects of all Caulkins's medically determinable impairments. "It is axiomatic that disability may result from a number of impairments which, taken separately, might not be disabling, but whose total effect, taken together, is to render claimant unable to engage in substantial gainful activity." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). Contrary to Caulkins's suggestion, the ALJ's conclusion relied on more than just the daily activities finding; he also considered the non-severity of Caulkins's mental impairments and his

11

ability to manage pain with medication. In addition to addressing each of Caulkins's impairments and the degree to which they limited his functioning, the ALJ assessed "the combined effect of all impairments." J.A. 19. In doing so, the ALJ "adequately explain[ed] his [] evaluation of the combined effects of the impairments." *Walker*, 889 F.2d at 50.

The ALJ's detailed analysis weighed evidence on both sides of the ledger. For example, he acknowledged that although Caulkins's anxiety and depression could cause him to become irritable and short-tempered, he also found that Caulkins had no problem getting along with friends and family, generally conformed to social standards, and presented in a polite and friendly manner. Consequently, the ALJ found that Caulkins had only a mild limitation in his ability to interact with others. The ALJ's analysis belies any argument that he disregarded Caulkins's non-severe mental impairment or failed to consider the mental health evidence in the record. To the extent Caulkins alleges the ALJ incompletely or selectively analyzed evidence, "the ALJ need only review medical evidence once in his decision" and is not required to address every document in the record. *McCartney v. Apfel*, 28 F. App'x 277, 279 (4th Cir. 2002); *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014).

Caulkins also faults the ALJ's fourth step in the analysis for not relying on any medical opinion that matched his residual function capacity evaluation and for picking and choosing medical evidence as a layperson. If the third step in the sequential process is not conclusive, at step four "the ALJ must then determine the claimant's residual function capacity, meaning the most a claimant can still do despite 'all of the claimant's medically determinable impairments of which the ALJ is aware, including those not labeled severe at

12

step two.'" *Woods*, 888 F.3d at 689 (quoting *Mascio*, 780 F.3d at 635); *see also* 20 C.F.R. § 416.920(e)).    But a residual function capacity analysis is an agency-conducted administrative assessment that considers all relevant record evidence.  *See* 20 C.F.R. § 416.945(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence."); *Felton-Miller v. Astrue*, 459 F. App'x 226, 230-31 (4th Cir. 2011).  Therefore, Caulkins's suggestion that the ALJ's residual function capacity analysis must be set aside simply because "the ALJ is a layman and did not obtain an expert medical opinion" misapprehends the agency's administrative review process.  *Felton-Miller*, 459 F. App'x at 231.  On this score, Caulkins's contentions must be rejected.

Reasonable minds may differ as to the appropriate weight the ALJ should have assigned to various pieces of evidence in the record.  What lies beyond dispute, though, is that "substantial evidence means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek*, 139 S. Ct. at 1154 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  The ALJ "buil[t] an accurate and logical bridge from the evidence to his conclusion." *Monroe*, 826 F.3d at 189 (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)).  Substantial evidence review does not permit us to supplant the ALJ's judgment with our own.  *See Hancock*, 667 F.3d at 472.  Consequently, we do not disturb the ALJ's determination that Caulkins's mental impairments were non-severe.

## C.

Finally, Caulkins asserts that the ALJ failed to adequately evaluate the medical opinion evidence.  In reaching a disability determination, the ALJ must consider medical

13

opinions in the record.  20 C.F.R. §§ 404.1527(b), 416.927(b).  Medical opinions of treating

sources are generally afforded greater weight than those of non-treating sources.  *See Lewis*

*v. Berryhill*, 858 F.3d 858, 867 (4th Cir. 2017) ("[T]he ALJ is required to give controlling

weight to opinions proffered by a claimant's treating physicians so long as the opinion is

well-supported by medically acceptable clinical and laboratory diagnostic techniques and

is not inconsistent with the other substantial evidence" in the record).  The rule is a well-

founded one, given that "the treating physician has necessarily examined the applicant and

has a treatment relationship with the applicant."  *Hines v. Barnhart*, 453 F.3d 559, 563 (4th

Cir. 2006).  "The treating physician rule is not absolute," however, and there are scenarios

in which the "ALJ may choose to give less weight to the testimony of a treating

physician"—for example, "if there is persuasive contrary evidence."  *Hines*, 453 F.3d at

563 n.2 (internal quotation marks omitted); *see also Arakas v. Comm'r of Soc. Sec. Admin.*,

983 F.3d 83, 107 (4th Cir. 2020) (quoting *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir.

1987)); *Dunn v. Colvin*, 607 F. App'x 264, 267-68 (4th Cir. 2015) (quoting *Mastro v. Apfel*,

270 F.3d 171, 178 (4th Cir. 2001); *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996)).

To determine what weight to afford a medical opinion, an ALJ considers "(1)

whether the physician has examined the applicant, (2) the treatment relationship between

the physician and the applicant, (3) the supportability of the physician's opinion, (4) the

consistency of the opinion with the record, and (5) whether the physician is a specialist."

*Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527).

These factors are nonexclusive, and the ALJ must give "specific reasons for the weight

given to the treating source's medical opinion."  SSR 96-2p, 61 Fed. Reg. 34,490, 34,492

14

(July 2, 1996). The ALJ's reasoning must be supported by evidence in the record, and the ALJ's findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* In sum, the ALJ is required to "give good reasons" when explaining the weight accorded to a treating physician's opinion. *Id.*

Starting with the medical opinion of Dr. Judith Connelly, Caulkins argues that the ALJ erred in affording her opinion little weight. Dr. Connelly asserted that it was "most probable" that Caulkins "would have problems" with attention and concentration such that his work-related tasks would be repeatedly disrupted, opining that such challenges "can be disabling." The ALJ, however, found that this opinion lacked any explanation. The portion of a March 2014 questionnaire that asked Dr. Connelly to provide the basis for her opinion did not explain her reasoning; instead, it was left blank. Setting aside this central complication, Dr. Connelly's opinion was also unsupported by the record. Clinical findings in the record did not support the generalized analysis Dr. Connelly provided. In an August 2015 questionnaire, Dr. Connelly stated that in some cases depression can be disabling without stating that this was, in fact, true in Caulkins's case.

Were we to read Dr. Connelly's general outline of depression symptoms that *can* cause depression as referring to Caulkins's condition definitively, those symptoms appear only sporadically in the record. "Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion." 20 C.F.R. § 404.1527(c)(4). When Caulkins followed doctor-recommended treatment, his symptoms abated to a significant degree and his concentration and memory functioned well—or at

15

least well enough to focus on activities such as designing a website and learning a second language. Neither do Dr. Connelly's notes sufficiently support the view that Caulkins had a functional limitation in attention or concentration. In mental status examinations that Dr. Connelly performed, she noted that her evaluation of Caulkins revealed "no evidence of thought or perceptual disturbances," and she found on another occasion that his "concentration and memory were intact, his insight and judgment were good, and his behavior was appropriate." J.A. 9, 10.

Considering this "persuasive contrary evidence," the ALJ provided appropriate justifications for according Dr. Connolly's opinion less than controlling weight. J.A. 9-12, 15-16. Despite Dr. Connolly's "specialization" as a psychologist, the ALJ reasonably discounted her opinion evidence in the record based on shortcomings in the "supportability of the physician's opinion" and "the consistency of the opinion with the record." *Johnson*, 434 F.3d at 654 (citing 20 C.F.R. § 404.1527). The ALJ concluded that her opinion regarding Caulkins's functional limitations was "not supported by objective or clinical findings" and conflicted with his "sporadic and conservative treatment" and "relatively unremarkable mental status examinations." J.A. 12. Contrary to Caulkins's argument, the ALJ's determination that Dr. Connolly's opinions were entitled to little weight was supported by substantial evidence.

Turning to the ALJ's assessment of Dr. Richard Kelly's opinions, Caulkins maintains that the ALJ erred in giving certain opinions by the VA primary-care physician little weight. Dr. Kelly found that Caulkins could sit for more than two hours at a time and for up to six hours total during an eight-hour workday. The ALJ, finding Dr. Kelly's

16

opinion well-supported by the record, afforded it great weight. By contrast, the ALJ found other opinions rendered by Dr. Kelly to be unsupported by evidence in the record. Though Dr. Kelly stated that standing for more than five minutes aggravated Caulkins's symptoms, the ALJ concluded that opinion must be read together with record evidence showing that Caulkins engaged in many other activities that would require similar exertion—including preparing simple meals, shopping, and vacationing at the beach.

Although Dr. Kelly opined that Caulkins's pain was so severe that it "constantly" interfered with his attention and concentration if he attempted to work full-time, J.A. 15, the ALJ found no documentation, treatment notes from Dr. Kelly or otherwise, supporting this statement. What is more, Dr. Kelly declared that Caulkins had been "so impaired" since about 2005. However, this finding is irreconcilable with the fact that Caulkins worked between 2005 and 2010 and first claimed he was disabled on December 1, 2010. J.A. 16. As for Dr. Kelly's opinions that Caulkins would need to change positions at unpredictable intervals, lie down, and take unscheduled breaks, the ALJ similarly and reasonably discounted the opinions because they lacked objective support and went unreferenced as complaints or restrictions in Caulkins's treatment record. Furthermore, the ALJ viewed Dr. Kelly's opinion as inconsistent with the record as a whole, finding it was an outlier because "no other treating or examining source has limited the claimant so restrictively." J.A. 18.

In addition, the ALJ's decision to accord certain of Dr. Kelly's opinions little weight was supported by substantial evidence. Noting Dr. Kelly was a primary care provider, the ALJ nevertheless concluded that these opinions lacked "clinical corroboration." J.A. 16.

17

The opinions in Dr. Kelly's August 2015 questionnaire were drawn not from clinical documentation, but from Caulkins's self-reported history. This Court has said before that an ALJ may give such claimant-driven evidence less than controlling weight "in the face of the conflicting evidence." *Mastro*, 270 F.3d at 178. Here, the ALJ found that these opinions were "subjective and not supported by the preponderance of the medical evidence." J.A. 18. Having reviewed the record, we agree. Faced with persuasive evidence to the contrary, the ALJ appropriately gave the opinions at issue less than controlling weight.

Finally, we address Caulkins's argument that the ALJ erred in affording lesser weight to the opinions of Dr. Todd Morton. Dr. Morton, a consulting psychologist, found in an April 2012 report that Caulkins could understand, retain, and follow instructions. The ALJ afforded this opinion "some weight"—an unsurprising conclusion, given that these abilities were well-documented in the record. But the ALJ declined to accept Dr. Morton's opinion that the daily stress of a work setting would overwhelm Caulkins's ability to cope with his impairments. Importantly, the ALJ found "no documented evidence that social interaction or stress exacerbates the claimant's mental impairments." J.A. 12. The ALJ also observed that this was consistent with Caulkins's own self-description, whereby he reported that his physical condition presented his primary impediment to work.

Many of Dr. Morton's opinions are unsupported by substantial evidence, making the ALJ's decision to give them less weight proper. For an ALJ to give a medical opinion controlling weight, the doctor's report should contain "supportability in the form of a high-quality explanation for the opinion and a significant amount of substantiating evidence."

18

*Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 268 (4th Cir. 2017). Although Caulkins argues that Dr. Morton's opinions should have been given greater weight, the opinions Caulkins identifies lack such support. Therefore, under agency regulations, the ALJ properly declined to assign these opinions controlling weight. *See* 20 C.F.R. § 404.1527(c)(3), (4).

Because the ALJ's findings were supported by substantial evidence, the district court, applying the same standard of review as this Court, rightly found that the ALJ's decision cleared the "not high" threshold required by law. *Biestek*, 139 S. Ct. at 1154. Accordingly, we affirm.

*AFFIRMED*

19