**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 21-2421**

───────────

RENARD T. OAKES,

Plaintiff - Appellant,

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security,

Defendant - Appellee.

───────────

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  Robert T. Numbers, II, Magistrate Judge.  (5:20-cv-00542-RN)

───────────

Argued:  January 25, 2023                    Decided:  June 7, 2023

───────────

Before KING and RUSHING, Circuit Judges, and FLOYD, Senior Circuit Judge.

───────────

Reversed and remanded by published opinion.  Senior Judge Floyd wrote the opinion in which Judge King joined.  Judge Rushing wrote a separate dissenting opinion.

───────────

**ARGUED:**  Karl Osterhout, OSTERHOUT BERGER DISABILITY LAW, LLC, Oakmont, Pennsylvania, for Appellant.  Natasha Todman McKay, SOCIAL SECURITY ADMINISTRATION, Baltimore, Maryland, for Appellee.  **ON BRIEF:**  Michael F. Easley, Jr., United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina; Keeya M. Jeffrey, Special Assistant United States Attorney, SOCIAL SECURITY ADMINISTRATION, Baltimore, Maryland, for Appellee.

FLOYD, Senior Circuit Judge:

Plaintiff-Appellant Renard T. Oakes sought disability benefits from the Social Security Administration in 2018. He primarily based his application on pain in his lower back, hips, legs, knees, and feet, as well as on hypertension. Throughout the administrative process, and upon review in federal district court, Oakes was denied benefits. He now appeals. For the reasons that follow, we reverse and remand for reconsideration of Oakes's benefit eligibility.

I.

Oakes applied for disability benefits in August 2018, alleging a disability that began in September 2016. According to Oakes, pain regularly shoots from his lower back down his legs, preventing him from either standing or sitting for too long. At times, it causes weakness in his legs. Due to this pain, he spends a typical day watching television in his recliner, occasionally attempting to perform chores "with breaks." A.R. 18. Despite his years-long struggle with this issue, Oakes's medical record is exceedingly sparse—he explains that he lacks insurance and cannot afford medical treatment in its absence. The totality of record medical evidence relating to his condition includes two emergency room visits and one administratively ordered consultative examination by M.A. Samia, M.D.

The Social Security Administration (SSA) denied him benefits at the initial and reconsideration stages, and he requested a review hearing before an administrative law judge (ALJ). The ALJ also denied him benefits. In so doing, the ALJ followed the

2

sequential five-step process prescribed by the Federal Code for evaluating alleged disabilities. *See* 20 C.F.R. § 404.1520(a).

At step one of this process, an ALJ considers a claimant's work activity, if any. If the claimant is performing "substantial gainful activity," then he is not disabled. *Id.* § 404.1520(a)(4)(i). At step two, the ALJ considers the medical severity of the impairment. *Id.* § 404.1520(a)(4)(ii). If the claimant fails to meet certain severity or duration requirements, then he is not disabled. *Id.* At step three, the ALJ again considers the medical severity of the impairment—this time determining whether the alleged impairment meets or equals a qualifying impairment listed in the regulations at 20 C.F.R. § 404. *Id.* § 404.1520(a)(4)(iii). If his impairment is listed, then the claimant is deemed disabled—if not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's residual functional capacity and past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant can still perform his past relevant work at his residual functional capacity, then he is not disabled—but if he cannot, the ALJ proceeds to step five. *Id.* At step five, the ALJ considers its previous residual-functional-capacity determination in tandem with the claimant's age, education, and work experience "to see if [he] can make an adjustment to other work. If [he] can make an adjustment to other work, [he] is not disabled." *Id.* § 404.1520(a)(4)(v). During the first four steps of the analysis, the burden of proof lies with the claimant, then it shifts to the SSA at step five. *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017).

Here, at step one, the ALJ determined that Oakes had not engaged in substantial gainful activity since 2016, and proceeded to step two. At step two, the ALJ determined

3

that Oakes suffered from the following severe impairments: "hypertension, gout, arthritis[,] . . . and back pain with bilateral sciatica." A.R. 16. At step three, the ALJ concluded that Oakes's impairments are not listed impairments under 20 C.F.R. § 404. At step four, the ALJ determined that Oakes had the residual functional capacity to perform medium work, defined by the ability to lift "no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, . . . [he] can also do sedentary or light work." Id. § 404.1567(c). The ALJ further concluded that, based on a medium-work capacity, Oakes could perform his past work as a cook. At step five, the ALJ determined that Oakes's residual functional capacity also permitted him to fill other "unskilled[,] medium occupations," including the positions of laundry worker, linen room attendant, marker, and bagger. A.R. 18. Given these conclusions, the ALJ determined that Oakes was not entitled to disability benefits.

Following issuance of the ALJ's decision, Oakes requested review by the SSA's Appeals Council. The Appeals Council denied his request. Consequently, the ALJ's decision became the SSA's final decision in his case. Oakes subsequently commenced an action in district court, seeking review of the SSA's final decision. Both sides moved for summary judgment, and the district court affirmed the SSA's final decision—denying Oakes's motion and granting the SSA's. Oakes timely appealed to this Court.

Oakes now contends that the district court erred by affirming the ALJ's final decision because: (1) the ALJ improperly discounted the opinion of Dr. Samia, thereby excluding from its residual-functional-capacity analysis Oakes's use of an ambulatory device; (2) the ALJ failed to properly consider Oakes's subjective complaints; and (3) the

4

ALJ improperly found that the daily activities to which Oakes testified were inconsistent with his claim of disability. The SSA responds that the ALJ reasonably discounted Dr. Samia's opinion, properly considered Oakes's subjective complaints, and properly considered Oakes's daily activities.

## II.

This Court upholds a Social Security disability determination if "(1) the ALJ applied the correct legal standards and (2) substantial evidence supports the ALJ's factual findings." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 94 (4th Cir. 2020) (simplified). Substantial evidence is "more than a mere scintilla" and "[i]t means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotations omitted). The threshold is "not high" and defers to the ALJ, "who has seen the hearing up close." *Id.* at 1154, 1157. "'In reviewing for substantial evidence, we do not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute our judgment' for the ALJ's." *Arakas*, 983 F.3d at 95 (quoting *Craig v. Chater*, 76 F.3d 858, 589 (4th Cir. 1996)). But "even under this deferential standard, we do not 'reflexively rubber-stamp an ALJ's findings.'" *Id.* (quoting *Lewis*, 858 F.3d at 870). "To pass muster, ALJs must build an accurate and logical bridge from the evidence to their conclusions." *Id.* (simplified).

5

III.

A.

First, the ALJ improperly discounted Dr. Samia's opinion. The way in which ALJs review medical-opinion evidence changed on March 27, 2017, following the promulgation of 20 C.F.R. § 404.1520c. *See Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 384 n.8 (4th Cir. 2021). For claims filed prior to that date, 20 C.F.R. § 404.1527 still applies. *Id.* Oakes filed his claim post-promulgation of 20 C.F.R. § 404.1520c, so we review for the ALJ's proper application of the new regulation. Under the new regulation, when determining the persuasiveness of medical opinions, an ALJ must consider the following factors: (1) supportability; (2) consistency; (3) a physician's relationship with the claimant; (4) a physician's specialization; and (5) other factors, like a physician's familiarity with the evidentiary record or their understanding of the SSA's policies and evidentiary requirements. 20 C.F.R. § 404.1520c(c)(1)–(5). Of these factors, supportability and consistency are the most important. *Id.* § 404.1520c(a), (b)(2). Supportability is the degree to which a provider supports their opinion with relevant, objective medical evidence and explanation, and consistency is the degree to which a provider's opinion is consistent with the evidence of other medical and non-medical sources in the record. *Id.* § 404.1520c(c)(1)–(2).

In the course—and aftermath—of this persuasion analysis, an ALJ will render a disability determination based on the available evidence when that evidence is consistent and sufficient. 20 C.F.R. § 404.1520b(a). Conversely, an ALJ will not render a determination when the available evidence is incomplete, insufficient, or inconsistent. *Id.*

6

§ 404.1520b(b). Evidence is incomplete or insufficient "when it does not contain all the information [that the ALJ] need[s] to make [its] determination." *Id.* Evidence is inconsistent "when it conflicts with other evidence, contains an internal conflict, [or] is ambiguous." *Id.* If the available evidence suffers from any of these inadequacies, an ALJ will determine "the best way" to resolve the issue, which may include one or more of four paths forward: (1) recontacting a medical source for clarification; (2) requesting additional existing evidence; (3) asking the claimant to undergo a consultative examination; or (4) asking the claimant or others for more information. *Id.* § 404.1520b(b)(2)(i)–(iv).[*] If "there are inconsistencies in the evidence that [the ALJ] cannot resolve or when, despite efforts to obtain additional evidence, the evidence is insufficient to determine whether [a claimant is] disabled, [the ALJ] will make a determination or decision based on the evidence [it possesses]." *Id.* § 404.1520b(b)(3).

Here, the persuasiveness of Dr. Samia's opinion is a close question. First, with respect to § 404.1520c(c)'s supportability factor, the ALJ seemed to conclude that Dr. Samia premised his determination that Oakes should use an ambulatory device on only Oakes's subjective complaints, and not on any objective medical evidence. It is true that the opinion offers little direct or explicit explanation underpinning the recommendation of an ambulatory device's use. But it is likewise true that Dr. Samia diagnosed Oakes with arthritis, and that imaging of Oakes's spine showed "severe narrowing" of one spinal disk, "moderate narrowing" of another spinal disk, and "[p]rominent hypertrophic degenerative

---

[*] Notably, this Court has not previously considered the precise implications of § 404.1520b(b)(2)(i)–(iv).

changes" in Oakes's lower lumbar facet joints.  A.R. 254.  These imaging results supported the impression that Oakes suffered from multi-level disk disease.

Of course, neither this Court nor an ALJ may determine that such conditions render an ambulatory device medically necessary—medical experts should render such conclusions.  But to give such short shrift to Dr. Samia's device recommendation as only supported by subjective complaints fails to sufficiently recognize the objective aspects of Dr. Samia's diagnosis.  Nor does it "build an accurate and logical bridge" between the evidence of Oakes's objective ailments and the ALJ's conclusion.  *Arakas*, 983 F.3d at 95 (simplified).

To the extent that Dr. Samia's justification for his ambulatory-device recommendation was ambiguous, the medical record is incomplete and the ALJ should have "take[n] additional actions" to seek clarification.  20 C.F.R. § 404.1520b(b).  As previously noted, the medical record in Oakes's case is extremely sparse.  According to him, his lack of finances and insurance prevented him from seeking the medical attention necessary to more ably document his conditions and support his disability claim.  It was for this reason that the ALJ ordered a consultative examination from Dr. Samia in the first place (at Oakes's request).  Although it is not the within the purview of an ALJ to help a claimant accumulate favorable evidence in an advocative capacity, this Court has "long recognized that the administrative hearing process is not an adversarial one, and an ALJ has a duty to investigate the facts and develop the record."  *Pearson v. Colvin*, 810 F.3d 204, 210 (4th Cir. 2015) (citing *Cook v. Heckler*, 783 F.2d 1168, 1173–74 (4th Cir. 1986)).

8

Accordingly, when an administratively ordered consultative examiner's opinion contains what ought to be an easily clarified ambiguity on a key issue, it logically follows that an ALJ must engage in a simple § 404.1520b(b)(2) inquiry. As discussed, the regulations clarify that "[w]hen there are inconsistencies in the evidence that we cannot resolve or when, despite efforts to obtain additional evidence, the evidence is insufficient to determine whether [a claimant is] disabled, we will make a determination or decision based on the evidence we have." 20 C.F.R. § 404.1520b(b)(3). Here, it cannot be said that the insufficiency in the record could not be resolved or that the ALJ reasonably endeavored to obtain additional evidence to remedy it. Thus, the ALJ's determination based only on the evidence that it possessed was woefully premature.

Of course, the scheduling of a consultative examination is itself a remedial action under the new regulations. *See id.* § 404.1520b(b)(2)(iii). But to schedule such an examination only to immediately dismiss its results on easily curable grounds amounts to a half-hearted execution of regulations intended to discern the truth of one's claim. To be sure, our position is not to be understood as requiring layer upon layer of remediation—each seeking to patch the inadequacies of the last—until a claimant receives benefits. But when a remedial measure is itself plagued by easily remedied inadequacies, it cannot be said that an ALJ applies sound legal principles by simply giving up.

Much of the same general analysis also applies to § 404.1520c(c)'s consistency factor. The ALJ concluded that Dr. Samia's recommendation that Oakes use an ambulatory device was inconsistent with other medical evidence in the record because, during two emergency room visits in 2018, examiners found that Oakes did not suffer from abnormal

9

gait, diminished range of motion, or neurological deficits. But viewing the three examiners' respective gait and mobility conclusions in a vacuum does not evince a logical bridge between the evidence and the ALJ's conclusion that Dr. Samia's opinion is inconsistent. Although the gait and mobility determinations differed, one emergency-room examiner also found that Oakes suffered from "[c]hronic midline low back pain with bilateral sciatica." A.R. 239. The other emergency-room examiner similarly diagnosed Oakes with "[a]cute exacerbation of chronic low back pain" and "[b]ilateral sciatica." A.R. 250. Thus, each of the three examiners diagnosed Oakes with extremely similar objective ailments. This consistency is important, particularly when Dr. Samia's examination of Oakes was the most recent—taking place about nine months after the emergency-room visits—and was the only one of the three examinations to include spinal imaging.

Nothing in the record expressly reconciles the differing mobility conclusions between 2018 and 2019, but it seems reasonable to believe that perhaps Oakes's objective ailments worsened during that time, thereby impacting his mobility. To be sure, neither this Court nor an ALJ may infer a medical diagnosis—like symptom progression. But when insufficient evidence prevents an ALJ from soundly determining whether providers' opinions are consistent, a § 404.1520b(b)(2) inquiry by the ALJ could remedy the uncertainty with relative ease. If given the opportunity, Dr. Samia could discuss whether the passage of time between 2018 and 2019 could explain Oakes's apparently deteriorated gait and mobility, particularly given his undisputed, objective diagnoses of sciatica, disk disease, and arthritis.

10

Thus, the ALJ's conclusion that Dr. Samia's opinion was inconsistent with those of the emergency-room physicians ignored the nuanced consistencies across examinations, and the role that the passage of time could play in reconciling the opinions. A simple inquiry could have resolved any ambiguities, and in the absence of clarity on the issues of consistency and supportability with respect to the three medical examinations, it cannot yet be said that substantial evidence supports the denial of benefits.

B.

Second, the ALJ improperly considered Oakes's subjective complaints. When evaluating a claimant's subjective complaints, "ALJs must use the two-step framework set forth in 20 C.F.R. § 404.1529 and SSR 16-3p." *Arakas*, 983 F.3d at 95 (citation omitted). First, "the ALJ must determine whether objective medical evidence presents a 'medically determinable impairment' that could reasonably be expected to produce the claimant's alleged symptoms." *Id.* (simplified). Second, after finding a medically determinable impairment, "the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled." *Id.* (simplified). Objective evidence is not required at this second step. *Id.* (simplified). Rather, the ALJ must consider the entire case record, including the claimant's subjective statements about intensity, persistence, and limiting effects of symptoms—even if objective medical evidence does not substantiate them. *Id.* (simplified).

Despite a history of pushback on subjective-statement reliance by the SSA, this Court allows a claimant to rely exclusively on subjective evidence in proving the second

11

part of the test. *Id.* (simplified). Because a claimant is entitled to "rely exclusively on subjective evidence to prove that [his] symptoms [are] so continuous and/or severe that they prevented [him] from working," an ALJ applies the incorrect legal standard in discrediting complaints "based on [a] lack of objective evidence corroborating them." *Id.* at 96 (simplified).

Here, the ALJ failed to adequately consider Oakes's subjective complaints. At step one of the two-step framework, there is no dispute that Oakes established a medically determinable impairment. All three of the medical examinations in the record—including those on which the ALJ ultimately relied—reflect some sort of back impairment, and the ALJ itself concluded that Oakes suffers from hypertension, gout, arthritis, and back pain with bilateral sciatica.

At step two, the ALJ failed to adequately consider the intensity and persistence of Oakes's pain. Instead, following a recitation of facts, the ALJ baldly stated that "the claimant's subjective complaints and alleged limitations were not persuasive." A.R. 17. The ALJ's only other mentions of Oakes's subjective complaints arose in the context of factual recitations referencing Oakes's hearing testimony and portions of Dr. Samia's opinion, but these were not accompanied by any symptom analysis. Furthermore, regarding the latter, the ALJ seemed to conclude that Dr. Samia improperly based his ambulatory-device recommendation on subjective complaints alone. Such an exclusive basis for a medical opinion is, indeed, improper. *See Craig*, 76 F.3d at 590. But the ALJ never addressed the fact that disability benefits can be awarded on the sole basis of an objective impairment and derivative subjective pain, regardless of whether a physician

12

properly supported their opinion on a tangential issue—here, the necessity of an ambulatory device for mobility.

In other words, the ALJ's opinion denying benefits seems to revolve around its rejection of Dr. Samia's opinion that Oakes requires an ambulatory device. But the law does not require that a claimant need an ambulatory device to qualify for disability. Separate and apart from his literal mobility, Oakes can qualify for benefits if he is in sufficient pain. The ALJ failed to meaningfully address this theory of qualification such that this Court may engage in judicial review. *See Cook*, 783 F.2d at 1172 ("Administrative determinations are required to be made in accordance with certain procedures which facilitate judicial review."). The ALJ likewise made no mention of the intensity or persistence of Oakes's complaints in analyzing his residual functional capacity. On this issue, "lack of explanation requires remand." *Mascio v. Colvin*, 780 F.3d 632, 640 (4th Cir. 2015).

## C.

Third, the ALJ improperly considered whether Oakes's daily activities were inconsistent with his claim of disability. ALJs may consider daily activities when evaluating symptoms, including pain. 20 C.F.R. § 404.1529(c)(3)(i). But an ALJ errs in extrapolating from daily and life activities that a claimant has increased residual functional capacity, or, in other words, has the "ability to do sustained work-related activities on a regular and continuing basis—*i.e.*, 8 hours a day, for 5 days a week, or an equivalent work schedule." *Arakas*, 983 F.3d at 100 (simplified). For years, this Court has "bemoaned the

tendency of ALJs to overstate claimants' Residual Functional Capacities and ability to work based on their daily activities." *Id.* at 101 (citations omitted). This Court also recognizes that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Id.* (simplified). Rather, "[b]eing able to live independently and participate in the everyday activities of life empowers people with disabilities and promotes their equal dignity. In pursuing those ends, disability claimants should not have to risk a denial of Social Security benefits." *Id.* Furthermore, "[a]n ALJ may not consider the *type* of activities a claimant can perform without also considering the *extent* to which [he] can perform them." *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018).

Here, the ALJ seems to have improperly considered Oakes's daily activities. In its opinion, the ALJ noted Oakes's ability to "cook, do laundry, drive[,] and walk independently" when explaining why it found Dr. Samia's opinion regarding Oakes's limited mobility to be unpersuasive. A.R. 16. Ultimately, the ALJ did not expressly consider Oakes's daily activities when determining Oakes's residual functional capacity. But it based its residual-functional-capacity analysis on its skepticism of Dr. Samia's opinion, so, for all intents and purposes, evidence of daily activities influenced the capacity analysis—even if indirectly.

Furthermore, although the ALJ noted that Oakes performs some activities punctuated by necessary "breaks," A.R. 15, and that he has "five out of seven bad days," *id.*, it seemed to provide these details only in the contexts of offering general background and seeking to undermine Dr. Samia's opinion. Thus, it did not meaningfully consider the

14

*extent* to which Oakes can perform daily activities for purposes of his residual functional capacity. *See Woods*, 888 F.3d at 694. In other words, even if the ALJ properly considered whether daily activities undermined Dr. Samia's opinion, it likewise should have separately and more deeply considered them in the capacity context. As with other issues above, "lack of explanation requires remand." *Mascio*, 780 F.3d at 640.

## IV.

We certainly acknowledge the deference with which we must treat decisions of the SSA when sound legal standards are applied and substantial evidence supports the conclusions reached. But we cannot condone a determination of the SSA devoid of sufficient explanation such that we may engage in meaningful judicial review. We likewise remain troubled by the tension here between an applicant's sparse medical record and an ALJ's dismissive treatment of a consultative examination ordered to remedy precisely that issue—particularly where the ALJ did not engage in regulatorily permitted remedial measures. Given these concerns, at this stage, it can neither be said that the ALJ applied sound legal standards, nor that substantial evidence supports a denial of benefits. Thus, we reverse and remand for additional administrative proceedings consistent with this opinion.

*REVERSED AND REMANDED*

RUSHING, Circuit Judge, dissenting:

The administrative law judge (ALJ) applied the correct legal standards, and substantial evidence supported her factual findings. So I would affirm the magistrate judge's decision granting judgment for the Commissioner.* *See Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 94 (4th Cir. 2020); 42 U.S.C. § 405(g).

After reviewing Oakes's evidence, conducting a hearing, ordering a post-hearing consultative examination by an additional doctor, studying that doctor's report, and receiving a response to that report from Oakes's attorney, the ALJ concluded that "the record contains sufficient information to make a decision" on Oakes's disability claim. A.R. 10. The ALJ determined that Oakes had not been disabled from September 2016 through November 2019 and that he was capable of performing his past relevant work as a cook, as well as other jobs that exist in significant numbers in the national economy.

Before our Court, Oakes challenges the ALJ's decision not to include an ambulatory device among the limitations the ALJ articulated when determining Oakes's residual functional capacity. Oakes argues that the ALJ erred by finding the opinion of the consultative examiner—Dr. Samia—unpersuasive on this point and, consequently, formulating a residual functional capacity that contradicted Dr. Samia's assessment of Oakes's limitations.

The ALJ applied the correct legal standard for assessing the persuasiveness of medical opinions, focusing on the "most important factors" of "supportability" and

---

* The parties consented to have the case decided by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

"consistency." 20 C.F.R. § 404.1520c(b)(2), (c)(1), (c)(2). At no point did the ALJ find Dr. Samia's report "ambiguous" or "incomplete." Maj. Op. at 8. Rather, she found his opinion about Oakes's need for an ambulatory device unsupported by his own examination of Oakes and inconsistent with the other medical examinations in the record. The duty to weigh the evidence and resolve conflicts in the record "rests with the ALJ, not with a reviewing court," and the ALJ fulfilled that duty here. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

Substantial evidence supported the ALJ's assessment of Oakes's limitations, even if this Court would have reached a different conclusion in the first instance. In September 2019, Dr. Samia examined Oakes and diagnosed him with high blood pressure and arthritis that predominantly bothered his back, left hip, and left knee. Regarding the arthritis, Dr. Samia reported that Oakes expressed "subjective discomfort" when moving his lower extremities, that his left knee was "tender to palpation," and that he reported taking only ibuprofen for his pain. A.R. 255–257. Dr. Samia assessed Oakes as having full strength— "5/5"—in his upper extremities and slightly diminished strength—"4/5"—in his lower extremities, an "acceptable" range of motion, and a "shuffling gait with mild to moderate limping when bearing weight on left lower extremity." A.R. 257. In his report, Dr. Samia also noted that Oakes confirmed he was able to "walk without assistance," "take a walk," "walk a block," sit, stand, "raise arms overhead," cook, do laundry, dress himself, and drive. A.R. 255. Oakes also reported owning a cane and a walker, which he used "predominantly outside of the house." A.R. 255.

17

The other two medical assessments in the record are from Oakes's emergency room visits in 2018. In May 2018, Oakes visited the emergency room with back pain that radiated down his legs. He reported taking over-the-counter pain medication and occasionally his wife's Percocet. The examining physician observed that Oakes's back was tender but he retained a "full range of motion," "normal motor function," "normal sensory function," and "normal gait." A.R. 239. Oakes was diagnosed with chronic midline low back pain with bilateral sciatica and prescribed prednisone and Percocet for pain. He returned to the emergency room in December 2018, reporting radiating back pain "similar to" his May visit. A.R. 249. He exhibited pain in the lumbar back but "no bony tenderness, no swelling, no edema and no deformity." A.R. 250. On examination, his range of motion was "normal," his strength was "normal," and his gait was "steady." A.R. 250–251. He was diagnosed with acute exacerbation of chronic low back pain and again prescribed pain medication.

This record supports the ALJ's rejection of Dr. Samia's opinion that Oakes "appear[s]" to need "an assistive device" for "both ambulation or balance" and "may have difficulty with rough and uneven surfaces as well as inclines, declines or stairs." A.R. 257. The ALJ found this opinion unsupported by Dr. Samia's own examination, which indicated "no major deficits to strength or range of motion," despite Oakes's back and leg pain, and which also reported that Oakes could "walk independently," cook, and do laundry, among other tasks. A.R. 16. The ALJ also found Dr. Samia's opinion inconsistent with the two medical exams that occurred outside the benefits evaluation process, during which Oakes displayed a full range of motion, normal strength and gait, and no neurological deficits,

18

despite his reported back and leg pain.  The ALJ further observed that Oakes had not sought any treatment for his back pain since December 2018.  Considering all this evidence, plus Oakes's own testimony and imagery of his lumbar spine, the ALJ concluded that "the record does not support [Oakes's] alleged loss of function." A.R. 17.  That may not be the only possible conclusion from the record evidence, but it certainly is a permissible one.

Nor does anything about the ALJ's analysis suggest that she discounted Oakes's subjective reports of pain.  Indeed, the ALJ didn't question the reality or severity of his pain but instead reasoned from the medical records and other evidence that his pain did not result in major deficits to his strength, range of motion, or ability to ambulate.  That was the relevant question for assessing Oakes's claims about the limiting effects of his symptoms.  *See* 20 C.F.R. § 404.1529.  For example, the ALJ noted that even when Oakes's subjective pain had brought him to the emergency room, he was found to have a normal gait, strength, and range of motion in his extremities.  The regulations do not permit the ALJ to accept a claimant's subjective statements to the exclusion of the rest of the record. *See id.*  Thus, the ALJ correctly considered all of the available evidence in evaluating how Oakes's pain affected his ability to work.

Because it is not the role of the reviewing court to reweigh conflicting evidence or substitute its judgment for that of the ALJ, I would affirm the Commissioner's decision denying Oakes's application for disability benefits.  I therefore respectfully dissent.