**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 24-1414**

─────────────

JASMINE BOULDEN,

            Plaintiff - Appellant,

v.

MARTIN J. O'MALLEY, Commissioner of Social Security,

            Defendant - Appellee.

─────────────

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Patricia Tolliver Giles, District Judge.  (1:23−cv−00465−PTG−LRV)

─────────────

Submitted:  December 2, 2024                    Decided:  January 8, 2025

─────────────

Before KING, WYNN, and THACKER, Circuit Judges.

─────────────

Affirmed by unpublished per curiam opinion.

─────────────

**ON BRIEF:**  Clifford M. Farrell, MANRING & FARRELL, Dublin, Ohio, for Appellant. Jessica D. Aber, United States Attorney, Richmond, Virginia, Matthew J. Mezger, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

─────────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Jasmine Boulden appeals the district court's decision to grant summary judgment to the Commissioner of Social Security related to the denial of her application for Social Security disability benefits. She argues that the agency's Administrative Law Judge incorrectly evaluated the medical opinions in the record by failing to account for the risk of absenteeism that her diagnoses posed. We affirm.

I.

Boulden has struggled with bipolar disorder and serious anxiety accompanied by panic attacks for many years.[1] These diagnoses have made it difficult for her to maintain steady employment. So, on August 27, 2020, at thirty years old, Boulden filed an application for supplemental security income, alleging disability beginning on that same date.[2]

In June 2021, clinical psychologist Dr. Robert Verdile met with Boulden to conduct a consultative psychological evaluation. As relevant here, his written report concluded that Boulden's "[p]anic attacks and coping through withdrawal would interfere with work attendance to a severe degree." J.A. 2423.[3]

The following month, state agency psychologist Dr. Nicole Sampson reviewed the record for the Social Security Administration and wrote that Boulden's "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary

---

[1] Boulden also has other mental and physical diagnoses, but they are not relevant for purposes of this appeal.

[2] Boulden initially alleged an onset date of June 1, 2016, but later amended the date.

[3] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

tolerances" was "Moderately Limited," and that "[s]he may have occasional difficulty focusing and concentrating but in general she can complete a normal work day and work week," although "[s]he might miss 1–2 days/month due to depression and anxiety." J.A. 99. Based on Dr. Sampson's review, the agency denied Boulden's claim.

Boulden sought reconsideration, and in December 2021, state agency psychologist Dr. Eric Oritt reviewed the record for the agency and agreed with Dr. Sampson's conclusions. He stated that Boulden "may have occasional difficulty focusing and concentrating," "would need a few breaks" during the workday, and may "miss a few days of work in a month," but he determined that "she can complete a general work day and work week." J.A. 106. The agency again concluded that Boulden was not disabled.

At the same time, during 2021, Boulden needed to reduce certain medications due to pregnancy, leading to a temporary relapse of some of her symptoms. She was able to return to the previous dosages of her medications soon after giving birth in early 2022. Nevertheless, in May 2022, Boulden's case manager, counselor Matilde Sarmiento Reyes, completed a "medical source statement" that indicated some serious limitations on her ability to work. For example, the evaluation stated that Boulden "has a severe and chronic mental illness," "benefits from breaks when she feels too depressed and anxious," is "[i]ncapable of even low-stress jobs," and would require extra breaks during a workday. J.A. 3602–03. Sarmiento Reyes twice indicated that Boulden would be anticipated to be absent from work "[m]ore than three times a month"; elsewhere, she indicated that the absences would only be "[a]bout twice a month." *Compare* J.A. 3604, *and* J.A. 3607, *with* J.A. 3611.

3

Following the agency's denial of reconsideration, Boulden requested a hearing before an Administrative Law Judge ("ALJ"), which took place in June 2022. At the hearing, a vocational expert testified that "three [missed days of work] per month is considered high absenteeism," and missing three days per month "would definitely reduce your chance of continued employment," because "[m]ost employers may accept one per month." J.A. 54–55. For her part, Boulden testified that "when [she] think[s] about working, . . . [she] go[es] into full panic mode," and that even without working, she was having panic attacks "three to four times a week." J.A. 58–59.

Soon after the hearing, the ALJ issued a decision denying benefits. The ALJ concluded that Boulden's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record" and were "inconsistent with the longitudinal medical evidence of record, which [did] not support the degree of alleged impairment, or a finding of disability." J.A. 23. Instead, he concluded that Boulden's bipolar disorder and anxiety left her with a residual functional capacity that was "limited to performing simple 1–4 step, routine, repetitive tasks in a low stress work environment, defined as requiring only occasional decision making and occasional changes in the work setting, where there would only be occasional contact with co-workers and supervisors, and no contact with the general public, and which would not require a fast pace or production quotas such as would customarily be found on an assembly line." J.A. 22.

To support this conclusion, the ALJ cited sources from the medical record, including notes from Boulden's primary-care visits from July 2020 to December 2020 "generally

4

show[ing] mental status exams within normal limits, stable mood, and no reports of anxiety and depression"; September 2021 notes reporting that Boulden's "mood was up and down, but mostly okay," though "[s]he was tearful when discussing a transition to a new therapist"; October 2021 notes indicating "the need for titration of psychotropic medications due to pregnancy"; December 2021 notes indicating "that it was unclear if [Boulden]'s symptoms of depression were related to her pregnancy status"; and March 2022 notes indicating a serious depressive episode, leading Boulden's provider "to restart psychotropic medications." J.A. 24–25.

The ALJ concluded that the "records show[ed] stability in 2020, with an exacerbation of symptoms with pregnancy," and noted that Boulden "did not resume [one of her medications after pregnancy] until . . . approximately April 2022." J.A. 25–26. Nevertheless, the ALJ stated, "records show the ability to adhere to a schedule and provide care for an infant." J.A. 26. So, the ALJ concluded, "[o]verall, the degree of limitations alleged is unsupported by the objective record." *Id.*

As for the four medical evaluations, while the ALJ found the opinions of Dr. Sampson, Dr. Oritt, and Dr. Verdile to be "somewhat persuasive," he concluded that their opinions were "not fully consistent with objective findings showing [Boulden was] more functional than indicated" because her "[m]ental status examinations [were] relatively normal notwithstanding [Boulden's] report of psychiatric symptoms," so "she should not miss work excessively or require additional considerations than those outlined in the residual functional capacity." J.A. 26–27. The ALJ found counselor Sarmiento Reyes's opinion "not persuasive" because it "appear[ed] to be supported by [Boulden]'s subjective

5

report of her limitations and not" Sarmiento Reyes's "independent objective findings made over the course of treatment" and was "inconsistent with [Boulden's] relatively normal mental status examinations." J.A. 27.

Having established Boulden's residual functional capacity, the ALJ turned to the question of whether Boulden could return to any of her past relevant work and determined she could not. Nevertheless, the ALJ assessed that, "[c]onsidering [Boulden]'s age, education, work experience, and residual functional capacity, there [were] jobs that exist[ed] in significant numbers in the national economy" that she could perform, such as laundry folder, ticketer/tagger, and routing clerk for sorting mail and packages. J.A. 28 (emphasis omitted). For that reason, the ALJ concluded that Boulden was not disabled.

After the Appeals Counsel denied Boulden's request for review, she filed a complaint in district court, arguing that the ALJ failed to properly consider certain required factors and that he erred by not including an absenteeism limitation in her residual functional capacity. In a thorough report and recommendation, the magistrate judge recommended that the district court grant summary judgment to the Commissioner of Social Security. Boulden filed objections, but the district court overruled her objections and adopted the report and recommendation. *Boulden v. O'Malley*, No. 1:23-cv-0465, 2024 WL 1008560, at *1 (E.D. Va. Mar. 8, 2024). Boulden timely appealed.

II.

"The Social Security Act provides benefits to qualifying individuals who have a disability, as defined by the Social Security Act." *Ard v. O'Malley*, 110 F.4th 613, 615 (4th Cir. 2024). Under the applicable regulations, the Social Security Administration undertakes

6

"a five-step process to determine whether an applicant is disabled." *Id.* (citing 20 C.F.R § 404.1520(a)). "The applicant has the burden at the first four steps[.]" *Id.* at 616. "If the first three steps do not lead to a conclusive determination [as to whether the claimant is disabled], the ALJ then assesses the claimant's residual functional capacity, which is 'the *most*' the claimant 'can still do despite' physical and mental limitations that affect her ability to work." *Mascio v. Colvin*, 780 F.3d 632, 635 (4th Cir. 2015) (emphasis added) (quoting 20 C.F.R. § 416.945(a)(1)).

On review of a denial of Social Security benefits, this Court "must uphold the Commissioner's decision 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Rogers v. Kijakazi*, 62 F.4th 872, 875 (4th Cir. 2023) (quoting *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 267 (4th Cir. 2017)). "In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (cleaned up). "Yet even under this deferential standard, we do not reflexively rubber-stamp an ALJ's findings. To pass muster, ALJs must build an accurate and logical bridge from the evidence to their conclusions." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020) (cleaned up).

Previously, under the "treating physician rule," ALJs were "required to accord more weight to the medical opinion of a treating source than to that of a non-treating source when evaluating conflicting medical opinion evidence." *Siders v. Comm'r of Soc. Sec. Admin.*,

No. 21-2329, 2023 WL 4488259, at *1 (4th Cir. July 12, 2023) (per curiam). But for claims, like Boulden's, that were filed on or after March 27, 2017, a new regulation—20 C.F.R. § 416.920c—applies.[4] "[U]nder the new regulatory scheme applicable to medical opinion evidence, an applicant's 'treating physicians are not entitled to special deference.'" *Booker v. Kijakazi*, No. 22-1828, 2023 WL 3645062, at *1 (4th Cir. May 25, 2023) (per curiam) (quoting *Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022)); *see* 20 C.F.R. § 416.920c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.").

Instead, the agency considers all medical opinions using four listed factors— "supportability," "consistency," "relationship with the claimant," and "specialization"—as well as "other factors that tend to support or contradict" the opinion. 20 C.F.R. § 416.920c(c) (capitalization altered). The first two factors—supportability and consistency—are "[t]he most important," and the regulations require the agency to "explain how [it] considered [those two] factors for a medical source's medical opinions . . . in [its] determination or decision." *Id.* § 416.920c(b)(2). By contrast, the agency "may, but [is] not required to, explain how [it] considered the [other] factors." *Id.*

"Supportability is the degree to which a provider supports their opinion with relevant, objective medical evidence and explanation, and consistency is the degree to

---

[4] While we have not yet addressed this regulation in published authority, we have discussed a parallel regulation that uses the same language, 20 C.F.R. § 404.1520c. *See Oakes v. Kijakazi*, 70 F.4th 207, 212 (4th Cir. 2023).

which a provider's opinion is consistent with the evidence of other medical and non-medical sources in the record." *Oakes v. Kijakazi*, 70 F.4th 207, 212 (4th Cir. 2023) (discussing same language in 20 C.F.R. § 404.1520c(c)(1)–(2)); *see* 20 C.F.R. § 416.920c(c)(1)–(2).

III.

On appeal, Boulden argues that the ALJ erred in conducting his supportability and consistency analysis of the four opinions contained in the record: those of Dr. Verdile, Dr. Sampson, Dr. Oritt, and counselor Sarmiento Reyes. She contends that all four medical opinions indicated that she "would have some sort of issue maintaining regular attendance if employed" and appears to contend that the ALJ erred by rejecting an absenteeism element in her residual-functional-capacity assessment without adequate explanation. Opening Br. at 17; *see id.* at 22.

We disagree. The ALJ recognized that the four opinions each included some statement related to absenteeism. *See* J.A. 26–27 (noting that Dr. Sampson "indicated [Boulden] was moderately limited in her ability to . . . maintain regular attendance"; that Dr. Oritt "adopted [Dr. Sampson's] mental opinion"; that Dr. Verdile concluded that Boulden's "[p]anic attacks would interfere with work attendance"; and that Sarmiento Reyes concluded that Boulden "would likely be absent from work more than three times per month"). But he rejected these views, concluding that Boulden "should not miss work excessively or require additional considerations than those outlined in the residual functional capacity." *Id.* This was because, in his view, none of the opinions were fully "consistent with objective findings showing [Boulden] is more functional than indicated"

9

because her "[m]ental status examinations are relatively normal notwithstanding her report of psychiatric symptoms." J.A. 26.

Boulden argues that the ALJ's analysis was deficient because he supported this point with citations to only "one exhibit and four separate pages in that exhibit" out of "a record that was over 3,600 pages long." Opening Br. at 31. Further, she notes, those four pages were notes from a primary care provider, not a mental health specialist. But our review of the record confirms relatively normal mental status examinations over the course of years and in treatment notes from a variety of providers, including Boulden's psychiatrist, primary care providers, and case managers. The ALJ did not need to cite every single such source to support his conclusion. *E.g.*, *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) ("While the Commissioner's decision must contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based, there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." (cleaned up)). And the ALJ *did* cite significant other record evidence elsewhere in his opinion, making clear he reviewed the record closely.

In reaching this conclusion, we do not intend to minimize Boulden's diagnoses. And we recognize that normal mental status examinations are not necessarily inconsistent with the notion that employment will cause her to experience panic attacks, which in turn could lead to absenteeism. After all, a normal mental status examination in a familiar environment does not preclude the possibility of an acute panic attack brought on by an unfamiliar one. But the question before us is not whether we would have reached the same

10

conclusion as the ALJ if we were in his shoes. *See Hancock*, 667 F.3d at 472 ("[W]e do not undertake to . . . substitute our judgment for that of the ALJ. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." (cleaned up)). The ALJ was entitled to draw his own conclusions from the record evidence. And here, we can trace the ALJ's reasoning from that evidence to his conclusion. *See Arakas*, 983 F.3d at 95.

Additionally, our resolution of this appeal is informed by this Court's recent decision in a highly similar case, *Turner v. Commissioner of Social Security*, No. 23-1760, 2024 WL 2764722 (4th Cir. May 30, 2024) (per curiam), which involved the same appellate counsel for both parties. In that case, claimant Chyanne Turner sought disability benefits based on mental impairments. *Id.* at *2. The record included opinions from state agency psychologists (who agreed that Turner would be able to complete a normal workday and work week, with one or two problems with attendance and punctuality per month) and treating psychologists (one of whom opined that Turner's diagnoses would cause her to be absent more than three times per month). *Id.* The ALJ found the former group of opinions partially persuasive, found the treating psychologists' opinions not persuasive, and ultimately denied benefits. *Id.* at *3. In so concluding, the ALJ noted that Turner's testimony was "not entirely consistent" with the evidence, including evidence regarding her ability to take care of her activities of daily living and seek employment as well as, notably, her "numerous unremarkable mental status examination findings." *Id.*

Like Boulden, on appeal, Turner challenged the ALJ's omission of "a limitation relating to absenteeism when calculating her residual functional capacity." *Id.* at *1. But

11

this Court affirmed, noting that the ALJ had appropriately evaluated the record and "explained why he found some limitations appropriate and why he rejected other limitations" and "why he credited some of the [medical] opinions over others." *Id.* at *4. We emphasized that "[c]alculating a claimant's" residual functional capacity—which, again, is "the *most* that a claimant is able to do on a sustained basis despite any limitations from her physical and mental impairments"—"is the Commissioner's responsibility and prerogative, so long as it accurately reflects the record evidence." *Id.* at *1, *5.

Boulden's counsel makes no attempt to distinguish this on-point case, argue that we should decline to follow it because it is unpublished and therefore not binding, or otherwise respond to the Commissioner's invocation of it in his brief. Instead, counsel raises only unconvincing arguments about supportability and consistency. We have evaluated some of those arguments above. Two points remain to be addressed.

First, Boulden argues that the four medical opinions were "uncontradicted and overwhelmingly consistent" regarding absenteeism. Opening Br. at 15; *accord id.* at 34. That overstates the case. The opinions *were* arguably contradicted—as the ALJ believed—by evidence "show[ing] the ability to adhere to a schedule and provide care for an infant" and "relatively normal" mental status examinations. J.A. 26. And they were not entirely consistent with each other. Dr. Verdile and counselor Sarmiento Reyes expressed certainty that Boulden's diagnoses would significantly interfere with her ability to attend work. *See* J.A. 2423 (Dr. Verdile concluding that "[p]anic attacks and coping through withdrawal would interfere with work attendance to a severe degree"); J.A. 3604, 3607, 3611 (counselor Sarmiento Reyes stating that absences would either be "[m]ore than three times

12

a month" or "[a]bout twice a month"). By contrast, Dr. Sampson and Dr. Oritt expressed confidence that Boulden could work full days and weeks—and concluded she was not disabled—while noting a possibility that she *might* miss some work. *See* J.A. 99 (Dr. Sampson concluding that Boulden's ability to "maintain regular attendance" was "Moderately Limited" and "[s]he might miss 1–2 days/month due to depression and anxiety," but "in general she can complete a normal work day and work week"); J.A. 106 (Dr. Oritt concluding that Boulden "can complete a general work day and work week," although her diagnoses "may cause her to miss a few days of work in a month").

Second, Boulden reads bad faith into the ALJ's supportability evaluation of the opinions of Dr. Sampson and Dr. Oritt, in which the ALJ noted that the doctors "supported their opinions with explanations based on a review of the available records at that time." J.A. 26. Boulden contends that the ALJ was "insinuat[ing] that there was evidence submitted after [the doctors'] reports were completed that would have altered their opinions," thus "creat[ing] an escape hatch to safely navigate around any opinions the ALJ disliked." Opening Br. at 24–25. The ALJ did no such thing. He merely acknowledged that the record before him included medical records that Dr. Sampson and Dr. Oritt were not privy to because they had not yet been produced when they conducted their evaluations, and recognized that the doctors appropriately supported their opinions based on the evidence before them. There is nothing sinister in the ALJ's statement.

## IV.

For the foregoing reasons, the district court's decision granting summary judgment to the Commissioner is affirmed.

14

*AFFIRMED*